## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| **KURTIS MELCHER;** | ) | |
| **HENRY SEGURA,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NUMBER** |
| | ) | |
| **TITLEMAX OF TEXAS, INC.;** | ) | |
| **NJC ASSET REPO LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | **JURY TRIAL DEMANDED** |

## <u>PLAINTIFFS' COMPLAINT</u>

**COME NOW** the Plaintiffs, Kurtis Melcher and Henry Segura, in the above-styled cause and for their Complaint against the Defendants state the following:

## <u>PARTIES</u>

1. The Plaintiff, Kurtis Melcher is a resident and citizen of the state of Texas, Brazoria County, and is over the age of twenty-one (21) years.

2. The Plaintiff, Henry Segura is a resident and citizen of the state of Texas, Harris County, and is over the age of twenty-one (21) years.

3. The Defendant, TitleMax of Texas, Inc. ("TitleMax"), is a Delaware corporation

1

with a principal place of business in Georgia and was, in all respects and at all times relevant herein, doing business in the state of Texas in this district, and is registered to do business in Texas.

4.    The Defendant, NJC Asset Repo LLC ("NJC Asset Repo"), is a Texas entity and was, in all respects and at all times relevant herein, doing business in the state of Texas.  The Defendant is engaged in the business of collecting consumer debts by using non-judicial self-help action in the repossession of automobiles from consumers residing in Brazoria County, Texas and is a "debt collector," as defined by the FDCPA 15 U.S.C. § 1692a(6).

## JURISDICTION AND VENUE

5.    This Court has jurisdiction under 15 U.S.C. § 1692k(d), and 28 U.S.C. § 1331, § 1332, and § 1367. Venue is proper in that the Defendants transacted business here, and the Plaintiffs reside here.

## FACTUAL ALLEGATIONS

6.    Upon information and belief, at some time before 2017, Defendant TitleMax held a lien/security interest on a 2005 GMC Yukon XL ("the Vehicle") in connect with a loan with a non-party.

7.    The Vehicle was impounded by the City of Pasadena Police Department.

8.    The City of Pasadena Police Department sent a First Notice of Impounded Vehicle to Defendant TitleMax on August 24, 2017.

2

9.      The City of Pasadena Police Department sent Defendant TitleMax a Second Notice of Impounded Vehicle on September 8, 2017.

10.     The Second Notice of Impounded Vehicle Notice informed Defendant TitleMax that if it failed to claim the Vehicle before the 30th day from the day of the notice then Defendant TitleMax would "[w]aive all right, title or interest" in the Vehicle and would consent to the sale of the Vehicle at public auction.

11.     Defendant TitleMax failed to claim the Vehicle and the Vehicle was sold at auction.

12.     This auction resulted in Defendant TitleMax losing its lien/security interest in the Vehicle.

13.     At auction, the Vehicle was purchased by Plaintiff Henry Segura from the City of Pasadena Police Department.

14.     A new Texas Certificate of Title was issued to Plaintiff Henry Segura without any liens or other encumbrances on December 6, 2017.

15.     Plaintiff purchased the car to be used primarily by Plaintiff Kurtis Melcher and his family.

16.     Plaintiff Melcher and his wife paid the registration fees on the Vehicle and used the Vehicle for personal use.

17.     At some point thereafter, Santander contracted with Defendant NJC Asset Repo to take possession of the Vehicle based on an alleged security interest it had prior to the auction.

18.     On or about January 12, 2017, Plaintiff Melcher and a neighbor noticed a white

        SUV suspiciously stopping in front of Plaintiff Melcher's home a couple of times.

19.     Sometime later that day, a tow truck operated by Defendant NJC Asset Repo drove

        by Plaintiff Melcher's home, then hooked up the Vehicle, and left with it.

20.     Plaintiff Melcher's neighbor followed Defendant NJC Asset Repo's tow truck onto

        Pearland Parkway.

21.     At this time, Plaintiff Melcher called Pearland Police Department to report the theft

        of the Vehicle.

22.     An officer with the Pearland Police Department talked with Plaintiff Melcher, the

        neighbor, and reviewed security camera footage obtained by the neighbor.  The

        officer also confirmed there was no repossession reported to the Pearland Police

        Department related to the Vehicle.

23.     Pearland Police Department investigated the incident and was able to track down

        Defendant NJC Asset Repo and the location of the Vehicle.

24.     Pearland Police Department learned that Defendant NJC Asset Repo dropped the

        vehicle off at a third-party auction lot and no longer had possession of it.

25.     Pearland Police Department eventually was able to get Defendant TitleMax to

        return the Vehicle to Plaintiff Melcher.

26.     On January 19, 2021, Defendant TitleMax left the Vehicle left at the home of

        Plaintiff Melcher without notifying him.

4

27.   Plaintiff Melcher noticed damage to the front and rear bumpers, a disconnected transmission cable, and a large scrape on his concrete driveway.  Plaintiff contacted Pearland Police Department about this damage.

## COUNT ONE
## NEGLIGENCE CLAIM AGAINST DEFENDANTS

28.   The Plaintiffs adopt the factual averments and allegations hereinbefore as if fully set forth herein.

29.   The Defendants was under a duty to not take the Vehicle since they had no security interest and to not damage the Vehicle.

30.   The Defendants breached that duty.

31.   As a proximate cause of Defendants' negligence, the Plaintiffs were deprived of the Vehicle, lost the use of their personal property, incurred monetary damages, and have suffered mental damages and the accompanying physical damages.

## COUNT TWO
## WANTONNESS CLAIM AGAINST DEFENDANTS

32.   The Plaintiffs adopt the factual averments and allegations hereinbefore as if fully set forth herein.

33.   Defendants, with a degree of willfulness and reckless disregard of the natural or probable consequences of their actions, acted in a manner that resulted in the unlawful repossession of the Vehicle.

34.   Defendants knew, or should have known, that their actions would likely or probably result in injuries such as those sustained by Plaintiffs.

35.   As a proximate cause of Defendants' conduct, the Plaintiffs were deprived of the Vehicle, lost the use of their personal property, incurred monetary damages, and have suffered mental damages and the accompanying physical damages.

**<u>COUNT THREE</u>**
**<u>CONVERSION CLAIM AGAINST DEFENDANTS</u>**

36.   The Plaintiffs adopt the averments and allegations hereinbefore as if fully set forth herein.

37.   Plaintiffs owned and had immediate possession of the Vehicle and personal property.

38.   The Defendant did not have a present and immediate right of possession of the Vehicle and/or the personal property at the time of repossession

39.   Without the Plaintiffs' consent, the Defendants intentionally deprived the Plaintiffs of their rightful possession of the Vehicle.

40.   At all times relevant hereto, the Defendants acted with malice, recklessness, and total and deliberate disregard for the contractual and personal rights of the Plaintiffs.

41.   As a proximate cause of Defendants' conduct, the Plaintiffs were deprived of the Vehicle, lost the use of their personal property, incurred monetary damages, and

have suffered mental damages and the accompanying physical damages.

## COUNT FOUR
## VIOLATIONS OF THE TEXAS DEBT COLLECTION PRACTICES ACT
## AGAINST DEFENDANT

42.    The Plaintiff adopts the factual averments and allegations of all the above

paragraphs hereinbefore as if fully set forth herein.

43.    Plaintiff is a consumer within the meaning of Tex. Fin. Code § 392.001(1).

44.    Defendants are debt collectors within the meaning of Tex. Fin. Code § 392.001(6).

45.    Defendants violated Tex. Fin. Code § 392.301.

46.    As a proximate cause of Defendants' conduct, the Plaintiffs were deprived of the

Vehicle, lost the use of their personal property, incurred monetary damages, and

have suffered mental damages and the accompanying physical damages.

## COUNT FIVE
## FDCPA CLAIM AGAINST DEFENDANT NJC ASSET REPO LLC

47.    The Plaintiffs adopt the averments and allegations of all the above paragraphs

hereinbefore as if fully set forth herein.

48.    The Defendant NJC Asset Repo LLC engaged in collection activities and practices

in violation of the Fair Debt Collection Practices Act.

49.    Defendants took non-judicial action to effect dispossession of the Vehicle without a

present right of possession in violation of 15 U.S.C. § 1692f(6);

50.    As a proximate cause of Defendant's conduct, the Plaintiffs were deprived of the

Vehicle, lost the use of their personal property, incurred monetary damages, and have suffered mental damages and the accompanying physical damages.

## AMOUNT OF DAMAGES DEMANDED

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs demand a judgment against the Defendants as follows:

51. Compensatory and punitive damages against the Defendants;

52. Remedies available under cited Texas law, including statutory damage, costs, and attorneys' fees and any other compensatory damages; and,

53. Remedies available under the FDCPA, including statutory damages, costs, and attorneys' fees and any other compensatory damages pursuant to 15 U.S.C.§1692k; and,

54. Such other and further relief that this Court deems necessary, just and proper.

## PLAINTIFFS DEMAND TRIAL BY STRUCK JURY

/S/ JOHN C. HUBBARD
JOHN C. HUBBARD
Attorney for Plaintiff

**OF COUNSEL:**
**JOHN C. HUBBARD, LLC**
PO Box 953
Birmingham, AL 35201
(205) 378-8121
jch@jch-law.com