Case 3:21-cv-00046   Document 36   Filed on 05/27/22 in TXSD   Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
May 27, 2022
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

GALVESTON DIVISION

No. 3:21-cv-46

KURTIS MELCHER, *ET AL.*, *PLAINTIFFS*,

v.

TITLEMAX OF TEXAS, INC., *ET AL.*, *DEFENDANTS*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Before the court is MVConnect, LLC, d/b/a MVTrac's motion to dismiss. Dkt. 29. Having considered the parties' arguments, the pleadings, and the applicable law, the court grants in part and denies in part.

## I. BACKGROUND[1]

Henry Segura, one of the plaintiffs, purchased a 2005 GMC Yukon XL at an auction by the Pasadena Police Department and received a Certificate of Title "without any liens or other encumbrances on December 6, 2017."

---

[1] When hearing a motion to dismiss under Rule 12(b)(6), "all factual allegations in the complaint must be taken as true and construed favorably to the plaintiff." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). The "facts" in this section are taken from the plaintiff's pleadings.

Dkt. 19 ¶¶ 14–15. Segura purchased the vehicle to be used by fellow plaintiff Kurtis Melcher (collectively "the plaintiffs"). *Id.* ¶ 16. At some time before 2017, TitleMax held a security interest in the vehicle. *Id.* ¶ 7. However, TitleMax lost its security interest in the vehicle by failing to respond when the Pasadena Police Department sent it a "Notice of Impounded Vehicle," once on August 24, 2017, and again on September 8, 2017, and by failing to claim the vehicle at the city's auction. *Id.* ¶¶ 8–13.

Nevertheless, TitleMax contracted with defendant MVTrac to repossess the vehicle. *Id.* ¶ 18. MVTrac then contracted with the defendant NJC Asset Repo to carry out the repossession. *Id.* ¶ 19. On or about January 12, 2021, NJC Asset Repo took the vehicle from Melcher's home, prompting Melcher to report its theft to the Pearland Police Department. *Id.* ¶¶ 20–21, 23. In coordination with the Pearland Police, the defendants returned the vehicle to Melcher's home on January 19. *Id.* ¶¶ 25–28. The defendants did not notify Melcher of the return, and the vehicle was returned with "damage to the front and rear bumpers, a disconnected transmission cable, and a large scrape on [Melcher's] driveway." *Id.* ¶¶ 28–29.

The plaintiffs sued the defendants, alleging negligence, conversion, and violations of the Fair Debt Collection Practices Act (FDCPA). *Id.* ¶¶ 30–44. The plaintiffs seek compensatory and punitive damages as well as

appropriate remedies under the FDCPA, including statutory damages, costs, attorneys' fees, and any other compensatory damages as outlined in 15 U.S.C. § 1692k. *Id.*

MVTrac now moves to dismiss the complaint. Dkt. 29.

## II. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim is facially plausible when the well-pleaded facts allow the court to reasonably infer that the defendant is liable for the alleged conduct. *Id.* "The court does not 'strain to find inferences favorable to the plaintiffs' or 'accept conclusory allegations, unwarranted deductions, or legal conclusions.'" *Vanskiver v. City of Seabrook, Texas*, No. CV H-17-3365, 2018 WL 560231, at *2 (S.D. Tex. Jan. 24, 2018) (quoting *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)). Naked assertions and formulaic recitals of the elements of the claim will not suffice. *Iqbal*, 556 U.S. at 678. Even if the facts are well-pleaded, the court must still determine plausibility. *Id.* at 679. Although the court is limited to considering just the pleadings and their attachments, it may take judicial notice of matters of public record. *Luman*

v. *Diaz*, No. CV H-19-4920, 2020 WL 4818832, at *2 (S.D. Tex. Aug. 18, 2020).

## III. ANALYSIS

### A. Negligence

In their negligence claim against MVTrac, the plaintiffs allege that MVTrac (1) had a duty to not damage the vehicle, (2) breached their duty, and (3) that as a proximate cause of their breach, the plaintiffs suffered "damage to the front and rear bumpers, a disconnected transmission cable, and a large scrape on [Melcher's] driveway . . . were deprived of the [v]ehicle, lost the use of their personal property, incurred money damages, and have suffered mental damages and the accompanying physical damages." Dkt. 19 ¶¶ 28–29, 33. To recover for negligence under Texas law, a plaintiff must show: "(1) the existence of a duty on the part of one party to another; (2) the breach of that duty; and (3) the injury to the person to whom the duty is owed as a proximate result of the breach." *Dion v. Ford Motor Co.*, 804 S.W.2d 302, 309 (Tex. App.—Eastland 1991, writ denied).

The parties contest whether MVTrac owed the plaintiffs a duty of care. Dkts. 19 ¶ 31; 29 at 4; 31 at 4–5; 32 at 3–4.

Central to the plaintiffs' claim of negligence is whether a duty of care can be imputed to a repossession middleman based on an implied bailment.² Dkt. 31 at 4. Texas courts have not spoken specifically on this issue.

Under Texas law, "[w]hether a duty exists is a threshold inquiry and a question of law." *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006). In determining legal duty, courts "balance a number of factors such as the risk and foreseeability of injury, the social utility of the actor's conduct, the consequences of imposing the burden on the actor, and any other relevant competing individual and social interests implicated by the facts of the case." *Texas Home Mgmt., Inc. v. Peavy*, 89 S.W.3d 30, 33–34 (Tex. 2002) (citing *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983)).

The plaintiffs allege that MVTrac owed them a duty that arose when it "[took] possession of the [v]ehicle . . . [which] created an implied bailment and a legal duty to the [p]laintiffs." Dkt. 31 at 4. Texas law recognizes a duty of care in an implied-bailment relationship. *See Russell v. Am. Real Est. Corp.*, 89 S.W.3d 204, 210 (Tex. App.—Corpus Christi 2002, no pet.) (explaining that a duty of care normally arises in a bailment situation and that "[b]ailment relationships may be governed by principles of contract or

---

² Because the plaintiffs never argued that MVTrac was in an employer/employee relationship with NJC Asset Repo, the court does not conduct a *respondeat superior* analysis.

negligence."). A showing of "[a] bailment relationship generally requires: (1) a contract, either express or implied; (2) delivery of property to the bailee; and (3) acceptance of the property by the bailee." *Crompton Greaves, Ltd. v. Shippers Stevedoring Co.*, 921 F. Supp. 2d 697, 726 (S.D. Tex. 2013) (citing *Russell*, 89 S.W.3d at 210). "Knowing possession of, or control over, property may establish an implied bailment." *Crompton Greaves,* 921 F. Supp. 2d at 726. "In an implied bailment, delivery and acceptance need not be formal." *Russell*, 89 S.W.3d at 211.

The plaintiffs allege that MVTrac contracted with NJC Asset Repo to take possession of the vehicle, Dkt. 19 ¶ 19, that MVTrac's role as the repossession middleman created an implied duty, and that MVTrac took possession of the vehicle when NJC Asset Repo took possession. Dkt. 31 at 4. The plaintiffs cite *Russell* for the proposition that MVTrac owed them a duty of care by way of an implied bailment. *Id.*

In *Russell*, the plaintiffs rented a home that was sold in a foreclosure, transferred to Fannie Mae, and then managed by Fannie Mae's property manager, ARE. *Russell*, 89 S.W.3d at 206–07. Based on instructions from Fannie Mae, an ARE representative re-keyed the house, took inventory of property left in the home, and physically removed some of that property. *Id.* at 207. On the issue of a bailment obligation by ARE to the plaintiffs, the

court of appeals found that "ARE, through its agents, knowingly packed and removed the Russells' possessions to Bellanger's garage for safekeeping . . . [and] ARE's assumption of care, custody and control over the Russells' personal property carried with it a commensurate duty to exercise reasonable care in handling that property." *Id.* at 211.

MVTrac responds that *Russell* is distinguishable. Dkt. 32 at 3–4. In that case, ARE's agent physically moved the items from the house for off-site storage. *Russell*, 89 S.W.3d at 207. But here, the plaintiffs have not alleged MVTrac ever physically possessed or even touched the vehicle. The plaintiffs allege that NJC Asset Repo physically took the vehicle, Dkt. 19 ¶ 21, and following the repossession, the vehicle was in the possession of a third-party auction lot, not MVTrac. *Id.* ¶ 26. While it is likely that NJC Asset Repo owed the plaintiffs a duty based on an implied-bailment relationship, MVTrac argues, that line of reasoning cannot be extended to MVTrac on these facts.

Moreover, MVTrac argues the plaintiffs are relying on boilerplate language in their assertions of duty and breach and that the plaintiffs cannot point to any facts showing what MVTrac "knew or should have known that would give rise to any duty owed to [the p]laintiffs." Dkt. 32 at 3. MVTrac maintains that it could not have owed a legal duty to the plaintiffs because

its involvement in the repossession was too indirect. *Id.* at 3–4; *see generally Russell*, 89 S.W.3d 204.

The plaintiffs' theory of implied bailment is not tenable based on the facts within the live complaint. While the plaintiffs have plausibly alleged the first element of an implied bailment, "a contract, either express or implied," they have not plausibly alleged that there was a "delivery of property to the bailee . . . [nor] acceptance of the property by the bailee." *Crompton Greaves*, 921 F. Supp. 2d at 726; *see also Russell*, 89 S.W.3d at 210. The plaintiffs have failed to show that MVTrac would be considered a bailee under Texas law and so no independent duty of care owed by MVTrac to the plaintiffs arises from these facts.

Taken as true, these facts do not support a reasonable inference that MVTrac is liable for the damages allegedly caused as a direct result of NJC Asset Repo's actions under a theory of implied bailment. Because the plaintiffs have failed to show MVTrac owed them a legal duty, their negligence claim fails, and the court need not consider the remaining negligence elements. Accordingly, the plaintiffs' negligence claim against MVTrac is dismissed.

## B. Conversion

In their conversion claim against MVTrac, the plaintiffs allege that (1) they owned or had immediate possession of the vehicle; (2) MVTrac acquired the vehicle wrongfully without "a present and immediate right of possession of the [v]ehicle . . . at the time of repossession;" and (3) without their consent, MVTrac intentionally deprived them of their right to possess the vehicle and "exercised unlawful control." Dkt. 19 ¶¶ 35–38.

Under Texas law, conversion is defined as the "wrongful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights." *Davis v. Toyota Motor Credit*, No. CIV.A. H-12-0287, 2013 WL 4786328, at *5 (S.D. Tex. Sept. 6, 2013) (citing *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971)). To plead a conversion claim, a plaintiff must establish that:

> (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; (3) the plaintiff made a demand for the property; and (4) the defendant refused to return the property.

*Freezia v. IS Storage Venture, LLC*, 474 S.W.3d 379, 386–87 (Tex. App.—Houston [14th Dist.] 2015, no pet.). The parties dispute only the second element. *Id.*; *see also* Dkts. 29 at 5–6; 31 at 5–6; 32 at 5–6.

As to the second element, dominion and control, "[i]t is not necessary that there be a manual taking of the property in question." *Waisath*, 474 S.W.2d at 447. "However, the defendant's actions must impair the plaintiff's ownership interest." *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009).

The plaintiffs allege that MVTrac is liable for conversion because it wrongfully acquired the vehicle without a "present and immediate right of possession of the [v]ehicle and/or the personal property at the time of repossession." Dkt. 19 ¶¶ 36–37. The plaintiffs have alleged that NJC Asset Repo, at MVTrac's behest, took their vehicle. But they allege no facts showing that MVTrac itself ever actually possessed the vehicle. And they point to no case law supporting their argument that MVTrac had constructive dominion and control by virtue of its relationship with NJC Asset Repo.

While the plaintiffs have plausibly alleged the first element of conversion, that "the plaintiff[s] owned, had legal possession of, or was entitled to possession of the property," *id.* ¶¶ 14–17, they have not plausibly alleged that MVTrac "assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights." *Freezia*, 474 S.W.3d at 386–87. Accordingly, their conversion claim fails and the court need not consider the

remaining conversion elements. The plaintiffs' conversion claim against MVTrac is dismissed.

### C. FDCPA

In their FDCPA-violation claim against MVTrac, the plaintiffs allege that MVTrac (1) "engaged in collection activities and practices in violation of the [FDCPA];" (2) "took non-judicial action to effect disposition of the [v]ehicle without a present right of possession in violation of 15 U.S.C. § 1692f(6);" and (3) proximately caused the dispossession of plaintiffs' vehicle and personal property, causing monetary, mental, and physical damages. Dkt. 19 ¶¶ 42–44.

#### 1. Debt Collector under FDCPA §1692a(6)

To state a claim under the FDCPA, a plaintiff must show "(1) that he was the object of collection activity arising from a consumer debt; (2) that Defendant is a debt collector as defined by the FDCPA; and (3) that Defendant engaged in an act or omission prohibited by the FDCPA." *Douglas v. Select Portfolio Servicing, Inc.*, No. CIV.A. 4:14-1329, 2015 WL 1064623, at *4 (S.D. Tex. Mar. 11, 2015) (citing *Hazzard v. Bourgeios,* 2011 WL 4738235, at *1 (S.D. Tex. Oct. 6, 2011)).

Under the FDCPA, a debt collector is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the

principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C.A. § 1692a(6).

MVTrac argues that despite the plaintiffs' allegations, it is neither a debt collector nor a skip-tracing company. Dkt. 29 at 7. Though there is no statutory definition of "skip tracer," the Seventh Circuit has defined "skip tracing" as "the process of locating a debtor and his property's whereabouts." *United States v. Cummings*, 395 F.3d 392, 394 (7th Cir. 2005). And though MVTrac argues that it is not a skip tracer, it admits that it "attempt[s] to locate vehicles subject to liens and forward the location for recovery." Dkt. 29 at 7 n.1.

There is considerable dispute throughout the federal judiciary on whether skip tracers qualify as debt collectors under the FDCPA.[3] The Fifth

---

[3] *See, e.g., Cummings*, 395 F.3d at 394; *Shannon v. Windsor Equity Grp., Inc.*, No. 12-CV-1124-W JMA, 2014 WL 977899, at *1 (S.D. Cal. Mar. 12, 2014) (finding that engaging in "skip-tracing, re-marketing, and repossession services, or some combination of the three" for another constituted a debt collector under FDCPA); *Goldstein v. Chrysler Fin. Co., LLC*, 276 F. Supp. 2d 687, 690 (E.D. Mich. 2003) (holding that the defendant was a skip tracer and did not constitute a debt collector under the FDCPA because "[t]heir principle purpose is not to collect debts, nor do they regularly collect or attempt to collect debts owed due to them or others."); *Campbell v. Triad Fin. Corp.*, No. 5:07-CV-579, 2007 WL 2973598, at *2, *11 (N.D. Ohio Oct. 9, 2007) (finding a defendant skip tracer who "receive[d] a commission for successfully locating vehicles, or otherwise closing the accounts" was not considered a debt collector under the FDCPA) ("Locating a car for repossession is not 'effecting . . . [the] consumer transaction.'").

Circuit has spoken on neither that issue nor on whether a repossession middleman can be a debt collector under the FDCPA.[4]

Nevertheless, the court is confident the Fifth Circuit would likely find, on this record, that MVTrac is a debt collector. Its actions surpass what can be classified as merely "skip tracing." More than just a data collector or information provider, MVTrac is a middleman that directly profits from the successful repossession of property. It advertises itself as a "[f]ull service recovery operation connecting lenders and repossession agents to facilitate quicker and more compliant recoveries." Dkt. 31 at 4.[5]

MVTrac also has a subscription service that financially incentivizes the repossessing of vehicles by its subscribers—repossession companies like NJC Asset Repo. *See* Dkt. 31 at 4; *MVConnect, LLC v. Recovery Database Network, Inc.*, No. 3:10-cv-1948, 2011 WL 13128799, at *2 (N.D. Tex. May 27, 2011) ("When a subscriber to the MVTRAC ALPR system locates a vehicle

---

[4] Though the Fifth Circuit has not chimed in, some courts have held that a middleman is a debt collector under the FDCPA. *See Clark v. PAR, Inc.*, No. CV-15-02322, 2015 WL 13781846, at *3 (C.D. Cal. July 22, 2015) (holding that the defendant's self-identification as "repossession 'forwarder,' . . . one step removed from the actual repossession" was neither persuasive nor determinative in dismissing the FDCPA claim against it); *Buzzell v. Citizens Auto. Fin., Inc.*, 802 F. Supp. 2d 1014, 1021 (D. Minn. 2011) (finding that the FDCPA applied to the "'middle man' between the creditor and the repossession company").

[5] Available at MVTRAC, https://mvtrac.com/ (last visited November 15, 2021).

that is to be repossessed, the subscriber, acting as an independent contractor, is authorized to repossess that vehicle on behalf of MVRecovery. The subscriber earns a repossession fee for repossessing the vehicle.").

MVTrac's model uses the internet, an "instrumentality of interstate commerce," to connect subscriber-creditors, such as TitleMax, with a repossession agent, such as NJC Asset Repo, to "collect, directly or indirectly, debts owed or due or asserted to be owed or due another." § 1692a(6). The relationship between MVTrac and NJC Asset Repo incentivizes repossessors to take property. Taken as true, these facts support a reasonable inference that MVTrac is a debt collector under the FDCPA.

### 2. Acts or Omissions Prohibited by the FDCPA

The final element for a FDCPA violation claim is that the defendant "engaged in an act or omission prohibited by the FDCPA." *Douglas*, 2015 WL 1064623, at *4. Under the FDCPA,

> [a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt…the following conduct is a violation of this section . . .(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if-- (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest.

15 U.S.C.A. § 1692f.

TitleMax, the defendant who had an alleged possessory interest, instigated the nonjudicial action by contracting with MVTrac to take possession of the vehicle. Dkt. 19 ¶ 18. MVTrac then took action by contracting with NJC Asset Repo to repossess the plaintiffs' vehicle. Dkt. 19 ¶ 19. According to the alleged facts, neither TitleMax, MVTrac, nor NJC Asset Repo had a present possessory interest in the vehicle collateral; yet they collaborated to used nonjudicial self-help methods to wrongfully acquire the property. *Id.* ¶¶ 13, 18–19, 21.

The plaintiffs have plausibly alleged facts that, taken as true, entitle them to relief: (1) that they were the object of collection activity arising from a consumer debt; (2) that MVTrac is a debt collector as defined by the FDCPA; and (3) that MVTrac engaged in an act or omission prohibited by the FDCPA, namely nonjudicial repossession in the absence of an enforceable security interest. The FDCPA claim against MVTrac survives the motion to dismiss.

### D. Punitive Damages

The parties disagree over whether the plaintiffs are entitled to seek punitive or exemplary damages. "Under Texas law, a plaintiff can recover exemplary damages for harm that results from gross negligence." *Lasslett v. Tetra Tech, Inc.*, No. 2:13-CV-072, 2015 WL 13805125, at *4 (W.D. Tex. Feb.

20, 2015). "'Reckless disregard' and 'gross negligence' are synonymous terms." *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 920 (Tex. 1981).

To recover punitive damages for gross negligence, "a plaintiff must show that (1) the conduct of the defendant involved 'an extreme degree of risk, considering the probability and magnitude of the potential harm to others' and (2) the defendant had an 'actual, subjective awareness of the risk involved . . . .'" *Lasslett*, 2015 WL 13805125, at *5 (quoting Tex. Civ. Prac. & Rem. Code § 41.001(11)). The Texas Supreme Court's definition of gross negligence is instructive for this purpose:

> Gross negligence, to be the ground for exemplary damages, should be that *entire want of care* which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it.

*Burk Royalty*, 616 S.W.2d at 920 (rejecting the "so slight a degree of care" rule) (emphasis added).

The plaintiffs have partially recited the statutory elements satisfying the remedy of punitive damages ("acted with malice, recklessness, and total and deliberate disregard for the contractual and personal rights of the [p]laintiffs"), Dkt. 19 ¶ 39, but their complaint alleges no facts that make a plausible showing of malice. Therefore, the plaintiffs are not entitled to recover punitive damages based on MVTrac's conduct.

Accordingly, the plaintiffs' request for punitive damages is dismissed. Likewise, because mental-anguish damages are generally not permitted in conversion claims for actual damages absent malice—and because the court has dismissed the plaintiffs' conversion claim—the plaintiffs' request for mental-anguish damages is dismissed. *City of Tyler v. Likes*, 962 S.W.2d 489, 495 (Tex. 1997).

*   *   *

For clarity, the following claims and remedies are dismissed:

- Negligence
- Conversion
- Punitive Damages
- Mental-Anguish Damages

The following claim survives:

- FDCPA Violation

Signed on Galveston Island this 27th day of May, 2022.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE